796 So.2d 273 (2001)
Tesa HOGGATT, Appellant
v.
Todd Morgan HOGGATT, Appellee.
No. 1999-CA-02088-COA.
Court of Appeals of Mississippi.
October 2, 2001.
Richard C. Fitzpatrick, Poplarville, T. Jackson Lyons, Jackson, Nance Fitzpatrick Stevens, Poplarville, for Appellant.
Mark Larson, Gulfport, for Appellee.
Before McMILLIN, C.J., BRIDGES, and MYERS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. This case is an appeal from an order changing custody of a minor child from the mother, Tesa Hoggatt, to the father, Todd Hoggatt. The order was entered some four and one-half years after the original divorce judgment had granted primary custody of the child to Mrs. Hoggatt. Mrs. Hoggatt contends that the chancellor erred as a matter of law when he failed to find a material change in circumstance relating to the custodial parent adverse to the child's interest as a prerequisite to modifying custody. See, e.g. Earwood v. Cowart, 232 Miss. 760, 100 So.2d 601 (1958). Mrs. Hoggatt argues that the chancellor, in order to justify his decision under the law, gave an overly broad reading to the Mississippi Supreme Court's decision in Riley v. Doernera reading she contends could undermine the longestablished jurisprudence of this State relating to custody modifications. Riley v. Doerner, 677 So.2d 740, 744 (Miss.1996). Additionally, Mrs. Hoggatt suggests that the Mississippi Supreme Court should reconsider, or at least clarify, its decision in Riley v. Doerner because of its proven ability in its present form to confuse both the chancellors of the State and the members of this Court, all of whom have the duty to apply binding precedent in the decision process as that precedent is announced by the supreme court.
¶ 2. In his opinion and judgment, the chancellor acknowledged the traditional requirement *274 that a change of custody must be based on proof of a change in circumstance in the situation of the custodial parent detrimental to the child's interest. Ash v. Ash, 622 So.2d 1264, 1265-66 (Miss. 1993). Subsequently, however, the chancellor suggested that the Riley v. Doerner decision extended a measure of "wiggle room" to the chancellor when the existing custodial arrangement is adverse to the child's best interest but it has not been proven that this constituted a change for the worse from some earlier period. The chancellor suggested, by way of example, that Riley v. Doerner might have some legitimate application when it was determined, based on facts developing after an earlier custody award, that the initial custody determination was never in the child's best interest. Nevertheless, despite suggesting this wider latitude available to him in ruling on the custody question, the chancellor ultimately found that the facts "show[ed] a material change in circumstances which not only affect the child's physical and mental health, but could also constitute a real danger." This specific finding would seem to substantially undermine Mrs. Hoggatt's position, which constitutes the major theme of her brief, that the case was decided by a(mis)reading of Riley v. Doerner by the chancellor. Nevertheless, because of problems we perceive in the chancellor's ruling which we will discuss in further detail below, we concede for purposes of our analysis that there is substantial cause for concern regarding the chancellor's assertion that a change of circumstance was proven.
¶ 3. The underlying facts of the existing custody arrangement that concerned the chancellor involved an apparent persistent disregard by the mother for the child's personal hygiene, a lack of supervision that caused the child to repeatedly place himself in situations where he could easily have been subjected to substantial physical harm, and a blatant lack of concern over the child's medical well-being as evidenced by the mother's failure to act on the child's severe dental problems. We are compelled to afford substantial deference to the chancellor in making such determinations. Sobieske v. Preslar, 755 So.2d 410, 413(¶ 12) (Miss.2000). He is the one who hears the evidence first-hand and is afforded the best opportunity to make assessments regarding the credibility of the various witnesses and to decide what weight to give to particular portions of the evidence. Id. at (¶ 11). When the chancellor's findings in this case are reviewed under that standard, we cannot see any basis to disturb the chancellor's determination that the existing custodial arrangement was detrimental to the child's well-being.
¶ 4. This conclusion leaves us face-to-face with the uncertainty as to whether the chancellor, in modifying custody, relied on authority found in Riley v. Doerner, as he first seems to indicate, or whether he, in fact, found a material change in circumstance in the mother's circumstances in the traditional sense as his later explicit pronouncement would suggest.
¶ 5. If, in fact, the chancellor's decision to modify custody is based on a supportable finding of a change in the custodial parent's circumstances adverse to the child's welfare, then the entire framework of Mrs. Hoggatt's argument on appeal collapses and our duty to affirm would seem clear. For that reason, we will examine that question first. The problem with the chancellor's finding of a material change in circumstance adverse to the child's interest is that the assertion is not supported by any attendant finding of fact regarding exactly how the mother's situation has changed for the worse since the original custody determination. Our own review of the evidence leads us to conclude that there is little or no evidence in the record *275 to prove that the child's situation existing at the time of the hearing represented a departure from an earlier happier time in the child's sojourn with Mrs. Hoggatt.
¶ 6. Nevertheless, despite Mrs. Hoggatt's persistent criticism of Riley v. Doerner (or, alternatively, the chancellor's misapplication of the decision arising from his misunderstanding of its true import), we conclude that this case represents one of those situations that Riley v. Doerner was intended to address. In particular, we find pertinent the supreme court's discussion regarding the avoidance of a "formalistic" or "rigid" application of the general rule when to do so was not in the child's best interest. Riley v. Doerner, 677 So.2d 740, 745 (Miss.1996).
¶ 7. It must be remembered that this Court has already concluded that the chancellor was not manifestly wrong in determining that the child's existing situation was detrimental to his emotional and physical health. With that in mind, we note that such a determination would, without question, support a change in custody were it preceded by evidence that the existing situation marked a change from some earlier period when the custodial parent was deemed to have treated the child in a better manner. That being the case, if a rigid application of the general rule regarding change of custody were to control the outcome of this case, the issue of custody would revolve solely around the question of whether the custodial parent had properly cared for the child at some earlier time. Making that the central issue in dispute would permit the custodial parent to preserve the existing custody arrangement by convincing the chancellor that, no matter how bad the child's existing situation might be, it was entirely consistent with the child's plight as it existed from the inception of the custody award. We do not believe that to be the law and conclude that the avoidance of such a bizarre state of affairs is precisely what Riley v. Doerner permits.
¶ 8. We do not read Riley v. Doerner as broadly as Mrs. Hoggatt contends it is in danger of being read. We do not think a fair reading of the opinion would, as Mrs. Hoggatt suggests, reopen the question of custody any time the non-custodial parent concludes that he or she could "outscore" the custodial parent on a fair application of the factors affecting custody determinations set out in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).
¶ 9. Rather, we read the opinion narrowly as having some application in those situations where the existing custodial arrangement has shown itself to be actually detrimental to the child's well-being and the non-custodial parent can, by virtue of subsequent improvement in that parent's overall situation, demonstrate that he or she offers an alternative custodial arrangement beneficial to the child that did not exist at the time the original custody determination was made. Whether there are other situations where Riley v. Doerner might apply is a matter not now before us and is a question that can properly be left for another day.
¶ 10. Even reading the Riley v. Doerner decision in this narrow light, we are satisfied that the proof demonstrated both (a) that the existing custody arrangement was detrimental to the child's welfare and (b) that Mr. Hoggatt had, through systematic effort during the post-divorce period, so improved his lifestyle that he could provide a living situation for the child that was substantially better than what existed at the time of the hearing. For that reason, we do not find any basis to overturn the chancellor's decision.
¶ 11. As to Mrs. Hoggatt's invitation that the decision in Riley v. Doerner be the subject of reconsideration because of *276 the damage it has done to the established law of child custody modification, we observe that this can only be done by the Mississippi Supreme Court should that court find it appropriate to grant certiorari. However, for reasons we have set forth in this opinion, we conclude that, at least so long as the case is given the narrow reading suggested by this opinion, the decision seems to afford a reasonable measure of flexibility to the chancellors in making custody determinations that has the potential to advance the best interest of the child or children involved, which is, of course, the principle consideration in all matters affecting child custody. Smith v. Todd, 464 So.2d 1155, 1158 (Miss.1985).
¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., concur.