# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00423-COA

SHANN M. MARTIN                                                    APPELLANT

v.

JAMES MITCHELL MARTIN JR.                                         APPELLEE

DATE OF JUDGMENT:               02/02/2018
TRIAL JUDGE:                    HON. JANE R. WEATHERSBY
COURT FROM WHICH APPEALED:      WARREN COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:         DAVID M. SESSUMS
ATTORNEY FOR APPELLEE:          BRANAN PATRICK SOUTHERLAND
NATURE OF THE CASE:             CIVIL - CUSTODY
DISPOSITION:                    AFFIRMED - 08/06/2019
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., GREENLEE AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     The Chancery Court of Warren County granted Shann Martin and James "Mitch"

Martin a divorce on the ground of irreconcilable differences.  The divorce decree awarded

Mitch physical custody of the couple's son and three parcels of real property.  Shann appeals,

challenging the chancery court's custody determination and distribution of the marital assets.

## FACTS AND PROCEDURAL HISTORY

¶2.     Shann and Mitch were married twice, most recently in 2013.  Their union produced

one child, a son.  The couple again separated in 2017.  During their marriage, Mitch's parents

gifted the couple three different parcels of property totaling thirty-five acres.  Both Shann's

and Mitch's names were on the deeds.  One parcel was where the couple intended to build

their family home. The land was cleared, but the home was never built. Another parcel was exchanged for Shann's mobile home. Upon the death of Mitch's father, his mother did not want to live in the house she shared with her husband, and the parties traded Shann's mobile home for her house. That parcel contained Mitch's childhood home, which Shann and Mitch used as their marital home. The couple used their joint tax returns to make repairs and improvements on the property.

¶3. When distributing the marital assets, the chancery court awarded Mitch the thirty-five acres, including the marital home. The chancery court awarded Shann $20,000 in compensation for improvements on the marital home. In exchange, Shann was to deed her undivided one-half interest in the thirty-five acres to Mitch. The chancery court found that each party had enough money to meet his or her needs and that the property division eliminated the necessity of alimony.

¶4. During the custody proceedings the chancery court conducted a best-interest analysis under *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983). The factors were found to equally favor both parents except for two: the morality of the parents and preference of the child, both of which favored Mitch. The chancery court awarded physical custody of the couple's son to Mitch and ordered that Shann pay $382 a month in child support.

¶5. Shann's appeal requests a different division of the property and a change in the custody determination.

## DISCUSSION

### I. The division of the assets was equitable.

2

¶6. Shann argues on appeal that the chancery court's distribution of the marital assets was, in part, an attempt to punish her for adultery. She maintains that her contributions to the marriage and accumulation of marital assets entitle her to a share of Mitch's retirement account and a greater division of the jointly-owned real property.

¶7. "It is within the [chancery court's] authority to make an equitable division of all jointly acquired real and personal property." *Bullock v. Bullock*, 669 So. 2d 1205, 1210-11 (¶24) (Miss. 1997). This Court reviews a chancery court's division of marital assets for an abuse of discretion. *Spahn v. Spahn*, 959 So. 2d 8, 12 (¶12) (Miss. Ct. App. 2006). We will not reverse a chancery court's distribution of assets absent a finding that the decision was manifestly wrong, clearly erroneous, or an erroneous legal standard was applied. *Brock v. Brock*, 906 So. 2d 879, 887 (¶47) (Miss. Ct. App. 2005).

¶8. Our Supreme Court has held that "the foundational step to make an equitable distribution of marital assets is to determine the value of those assets." *Stribling v. Stribling*, 906 So. 2d 863, 870 (¶25) (Miss. Ct. App. 2005). From there the chancery court must apply the *Ferguson* factors which include: (1) contribution to the accumulation of the marital property; (2) dissipation of the assets; (3) the market or emotional value of assets subject to distribution; (4) the value of assets not subject to distribution; (5) the tax and economic consequences of the distribution; (6) the extent to which property division may eliminate the need for alimony; (7) the financial security needs of the parties; and (8) any other factor that in equity should be considered. *Ferguson v. Ferguson*, 639 So. 3d 921, 928 (Miss. 1994). Upon review, this Court will not conduct a new *Ferguson* analysis but will examine the

chancery court's application of the factors. *Spahn*, 959 So. 2d at 12 (¶12).

¶9. Shann contends that the distribution of assets was overwhelmingly in Mitch's favor. Yet the record does not contain financial information to support this argument. Despite numerous requests from the chancery court, neither party provided the court with a single valuation of the assets at issue. There was no testimony of the market value of the real property. Appraisals were never conducted. Both parties failed to provide an amount of the tax refunds, the amount of money which was invested into the marital home, or by whom the money was invested. Indeed, the chancery court even noted in the divorce decree that "the Court [was] perplexed at the lack of evidence concerning property values."

¶10. It is incumbent upon the parties, not the chancery court, to prepare the evidence needed to clearly make a valuation judgment. *Stribling*, 906 So. 2d at 870 (¶25). "Where a party fails to provide accurate information, or cooperate in the valuation of assets, the [chancery court] is entitled to proceed on the best information available." *Id*.; *see also Messer v. Messer*, 850 So. 2d 161, 170 (¶43) (Miss. Ct. App. 2003) ("This Court has held that when a chancellor makes a valuation judgment based on proof that is less than ideal, it will be upheld as long as there is some evidence to support his conclusion."). "To the extent that further evidence would have aided the chancellor in these decisions, the fault lies with the parties and not the chancellor." *Ward v. Ward*, 825 So. 2d 713, 719 (¶21) (Miss. Ct. App. 2002).

¶11. Where, as here, a chancery court "appears to have fully explored the available proof and arrived at the best conclusions that [they] could . . . we can discover no abuse of

4

discretion in those efforts that would require us to reverse [their] valuation determinations." *Dunaway v. Dunaway*, 749 So. 2d 1112, 1121 (¶28) (Miss. Ct. App. 1999). The chancery court used the information provided by the parties to conduct a *Ferguson* analysis. "To the extent that the evidence on which the [chancery court] based [its] opinion was less informative than it could have been, we lay that at the feet of the litigants and not the [chancery court]." *Id.*

¶12. This Court employs an "attitude of equity and non-punishment towards the division of marital property." *Carrow v. Carrow*, 642 So. 2d 901, 904 (Miss. 1994). Shann claims on appeal that the chancery court's award was punishment for her conduct during the marriage. But, "[t]his Court [has moved] away from the harsh effects of punishment in domestic cases towards the just principles of fairness." *Lenoir v. Lenoir*, 611 So. 2d 200, 204 (Miss. 1992). The chancery court was within its discretion in decreasing the award, and the record is devoid of evidence that the property distribution was a punishment.

¶13. Finding no error of law or abuse of discretion, we affirm the chancery court's property distribution.

## II. The child custody determination was proper.

¶14. For her second assignment of error, Shann contends that the custody order should be vacated due to perceived shortcomings in the guardian ad litem's investigation. Specifically, she argues that the guardian ad litem failed to include any mention of Mitch's "adultery and cohabitation" with his girlfriend and that this omission improperly influenced the chancery court's custody determination.

5

¶15. "This Court applies a limited standard of review in child-custody cases." *Gateley v. Gately*, 158 So. 3d 296, 300 (¶19) (Miss. 2015). We "will reverse a [chancery court's] decision regarding child custody determinations only when the decision of the trial court was manifestly wrong or clearly erroneous, or an erroneous legal standard was employed." *Purviance v. Burgess*, 980 So. 2d 308, 310-11 (¶8) (Miss. Ct. App. 2007).

¶16. "[T]he polestar consideration in any child custody matter is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1004. To determine the best interest of the child, Mississippi courts are guided by the factors set forth in *Albright.*

¶17. Chancery courts may appoint a guardian ad litem to assist in making custody determinations. The duty of a guardian ad litem is to gather information and make a recommendation to the Court. Chancery courts are not obligated to abide by a guardian ad litem's recommendation. *Gateley*, 158 So. 3d at 301 (¶24). It is the chancery court, not the guardian ad litem, who is the ultimate finder of fact. *Id.* "[T]his Court will uphold a [chancery court's] custody order even if it is partly based on a less than perfect guardian-ad-litem investigation." *Id.* at (¶26).

¶18. Shann is right—the information about Mitch's girlfriend was not included in the guardian ad litem's report. Yet the information was repeatedly brought out during trial. Testimony about Mitch's relationship was elicited during Mitch's cross-examination and when their son was questioned by the court. Further, the chancery court noted Mitch's girlfriend in the final decree. The chancery court properly considered the guardian ad litem's report and reached the same result after a thorough *Albright* analysis. Any concerns were

6

alleviated by the court's diligent inquiry and the robust cross-examination. This issue is without merit.

¶19. For the reasons discussed above we affirm the chancery court's division of the marital assets and custody determination.

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. J. WILSON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**